30 F.3d 126
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Juan CAMACHO-PACHECO, Plaintiff, Appellant,
v.
Luis A. MEDINA-VARGAS, ET AL., Defendants, Appellees.
Antonio RODRIGUEZ-TORRES, ET AL., Plaintiffs, Appellants,
v.
LUIS A. MEDINA-VARGAS, ET AL., Defendants, Appellees.
 No. 93-2347, 93-2348
 United States Court of Appeals,
First Circuit.
 July 11, 1994.
 
 Appeals from the United States District Court for the District of Puerto Rico [Hon. Raymond L. Acosta, U.S. District Judge ]
 Roberto Buso-Aloy, with whom Harry Anduze Montano was on brief for appellants Rodriguez, et al.
 Francisco R. Gonzalez, with whom Jesus Hernandez Sanchez and Hernandez Sanchez Law Firm were on brief for appellant Camacho-Pacheco.
 Edgardo Rodriguez-Quilichini, Assistant Solicitor General, with whom Pedro A. Delgado-Hernandez, Solicitor General, and Carlos Lugo-Fiol, Deputy Solicitor General, were on brief for appellees.
 D. Puerto Rico
 AFFIRMED.
 Before Torruella, Cyr and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 During the evening of March 10, 1990, Officer Luis Medina Vargas arrived by unmarked patrol car in the Caimito Ward of Yauco, Puerto Rico, accompanied by his partner, Antonio Rodriquez. Medina, who believed that he had come upon an illegal street-side "dice" game, jumped from the patrol car, announced himself as a police officer, and fatally shot Manuel Camacho Rodriquez in the back. Camacho was unarmed.
 
 
 2
 In August 1991, Camacho's family filed suit in federal district court against Medina, his partner, and several police department supervisors, pursuant to 42 U.S.C. Sec. 1983. The complaint alleged, inter alia, that Medina's partner had failed to take reasonable measures at the scene to prevent the shooting, and that Medina's supervisors had demonstrated reckless or callous indifference to Camacho's constitutional rights by (i) maintaining deficient police recruiting procedures and failing adequately to train or supervise Camacho for this "special" patrol, (ii) ignoring previous administrative complaints lodged against Camacho, and (iii) permitting department-wide use of excessive force. The district court ultimately granted summary judgment for the partner and the supervisors.
 
 
 3
 A de novo review of the summary judgment record, see Fed. R. Civ. P. 56(c); Gaskell v. The Harvard Coop. Soc'y, 3 F.3d 495, 497 (1st Cir. 1993), leads us to conclude that summary judgment was proper.
 
 
 4
 First, the claim against Medina's partner falters because all record evidence indicates that Medina fired his weapon a split second after jumping from the patrol car, before his partner even had time to shift the vehicle into park.
 
 
 5
 Second, the record is similarly deficient as concerns appellants' claims against Medina's supervisors:
 
 
 6
 Supervisor liability [under section 1983] may not be predicated upon a theory of respondeat superior. ... Moreover, a supervisor cannot be liable for merely negligent acts. Rather, a supervisor's acts or omissions must amount to a reckless or callous indifference to the constitutional rights of others. "An official displays such reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's rights."
 
 
 7
 Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91-92 (1st Cir. 1994) (citations omitted). In order to surmount the required evidentiary threshold, appellants needed to show " 'an "affirmative [causal] link" between the street level of misconduct and the action or inaction of supervisory officials.' " Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989) (citation omitted).
 
 
 8
 None of the evidence adduced by appellants even remotely suggests that Medina's supervisors were or should have been on notice that Medina posed a danger to the public. There was no evidence that Medina's prior conduct demonstrated an inclination or tendency to use excessive force, nor that the police department routinely used excessive force. Absent such evidence, appellants could not establish that the defendant supervisors knowingly instituted or maintained a recruiting system ill-suited to rooting out dangerous recruits. See Febus-Rodriguez, 4 F.3d at 92 (noting that summary judgment record must show that supervisor knew of recruiting and training problems, knowledge which reflected a "conscious policy" decision to hire or retain incompetent officers).
 
 
 9
 Nor was there evidence to substantiate appellants' conclusory contentions that the sort of gambling patrol in which Medina was engaged is a policing task requiring "special" training or constant supervision by superior officers. Medina graduated from the police academy in 1986, having taken such courses as "basic police tactical operations" and "use and handling of firearms." During the next four years, Medina served primarily as a traffic officer, earning numerous commendations for exemplary police service (e.g., apprehension of murder suspects) and professional demeanor. He was honored as Policeman of the Year in 1989- 90. Official police department files contain no administrative complaints against Medina prior to the Camacho shooting. Cf. id. at 93-94 (summary judgment awarded where five prior administrative complaints were "unrelated" to the violent activity giving rise to plaintiff's suit); but cf. Gutierrez-Rodriguez, 882 F.2d at 564 (finding supervisor liability based on several prior complaints of brutality). Appellants made conclusory allegations in their complaint that Medina was "known," on the police force and in the community, for aggressive behavior, and that his supervisors engaged in a systematic cover-up of citizen complaints. But they offered no competent evidence in support of these allegations.
 
 
 10
 Given the dearth of competent evidence, and the failure to request an extension of the discovery deadline as permitted under Fed. R. Civ. P. 56(f), Resolution Trust Corp. v. North Bridge Assocs., Inc., F.3d , (1st Cir. 1994) [1994 U.S. App. LEXIS 9358, at * 10-13 (1st Cir. May 2, 1994) ], the district court correctly concluded that appellants failed to demonstrate a trialworthy issue as to whether the defendant supervisors had reason to know that Medina possessed a dangerous or volatile disposition. Accordingly, the district court judgment must be affirmed.
 
 
 11
 Affirmed.